UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- X

KIMBERLY MICHIELS,

               Plaintiff,

     -against-

CENTRAL ISLIP SCHOOL DISTRICT and
EDGARD PAEZ,

               Defendants.

--------------------------------------------------------------------- X

CV  __17-525__

COMPLAINT

PLAINTIFF DEMANDS A
TRIAL BY JURY

Plaintiff, Kimberly Michiels ("Ms. Michiels"), by her attorney Brendan Chao, for her Complaint against Defendants Central Islip School District and Edgard Paez ("Mr. Paez"), as aider and abettor, alleges as follows:

## THE PARTIES

1.      Plaintiff, Kimberly Michiels, was employed by Central Islip High School ("CIHS").

2.      CIHS is part of the Central Islip School District, a school district on Long Island, New York.

3.      Central Islip School District is located at 50 Wheeler Road, Central Islip, New York 11722.

4.      Mr. Paez is, upon information and belief, the Assistant Principal of CIHS.

5.      Mr. Paez is Ms. Michiel's supervisor and she takes directives from him for her clerical work.

6.      Upon information and belief, Mr. Paez is a resident of New York, and a citizen of the United States.

## THE NATURE OF THE ACTION

7.      This is a civil action for damages and remedies brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000 et seq. ("Title VII"), and the New York State Executive Law, as amended, §§ 290 et seq. ("NYSHRL").  Specifically, Defendants discriminated against Ms. Michiels because of her sex in the terms, conditions, and privileges of her employment, and subjected her to a hostile work environment.

## JURISDICTION & VENUE

8.      This Court has jurisdiction over this action under 28 U.S.C. § 1331 and principles of supplemental jurisdiction, 28 U.S.C. § 1367.

9.      Ms. Michiels filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about October 5, 2015.

10.      On or about November 23, 2016, counsel for Ms. Michiels received a Notice of Right to Sue from the EEOC, and less than ninety days have elapsed since the filing of the instant lawsuit and receipt of the Right to Sue letter.

11.      Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in the Eastern District of New York.

## FACTS

12.      Ms. Michiels began working for Central Islip School District in or about 2001 as a Teacher's Aide.

13.      In or about 2003, plaintiff became a Clerk Typist

14.      In 2010, plaintiff was promoted to Senior Clerk Typist.

15.     Ms. Michiels's responsibilities as Senior Clerk Typist included, among other things, keeping accurate records of faculty attendance and field trips, assigning classes to substitute teachers, budget ordering for multiple departments, ensuring staff positions were filled, making sure all special education students received an aide, typing memos and disciplinary letters for the Assistant Principal, and any other duties assigned to her by the Administration of CIHS.

16.     Throughout the course of her employment with CIHS, Ms. Michiels was qualified for her position, and performed her duties in a professional and competent manner.

17.     In or about 2005, Mr. Paez and Ms. Michiels worked together at the Ralph G. Reed Middle School.

18.     During Ms. Michiel's employment at the middle school, Mr. Paez would make sexually inappropriate comments regarding how "sexy" she looked.

19.     In or about August of 2014, Mr. Paez began working with Ms. Michiels at CIHS.

20.     Mr. Paez immediately began acting sexually inappropriate towards Ms. Michiels.

21.     In or about August of 2014 at the CIHS Main Office, Mr. Paez took a yard stick and was pretending to smack her buttocks with it. When Ms. Michiels leaned over the front desk to speak with someone, Mr. Paez hit Ms. Michiels' buttocks with the yardstick.

22.     Ms. Michiels immediately stated, "That hurts, do not do that again."

23.     The blow from Mr. Paez left a red mark on Ms. Michiels.

24.     Brett MacMongile ("Mr. MacMongile"), the CIHS Principal, witnessed this incident, laughed, and stated "I didn't see anything."

25.     In or about, June 2015, the last week of the school year, Mr. Paez asked that Ms. Michiels report to his office.

26.     When Ms. Michiels entered his office, Mr. Paez closed the door and began

3

to try to hug and kiss Ms. Michiels.

27.     Ms. Michiels immediately pulled away from Mr. Paez and demanded that he stop and stated "I am not going to do anything with you."

28.     Mr. Paez then stated "I am so turned by you" and "I am very horny in the morning."

29.     After Ms. Michiels pulled away from Mr. Paez's grasp, she headed for the door.

30.     Mr. Paez then grabbed Ms. Michiels, pushed against her with his hips and groin and began to grind himself on her.

31.     While Mr. Paez pushed himself against Ms. Michiels, he asked her, "Are you turned on?" and stated "Can you help take care of me? My girlfriend doesn't like sex in the morning, and it is when I am most turned on."

32.     Mr. Paez then asked Ms. Michiels to "lean over the file cabinet" in order to have sex with him.

33.     When Ms. Michiels was finally able to exit the office, she immediately felt shocked, embarrassed, and afraid to report Mr. Paez's improper behavior.

34.     In or about a week later, Ms. Michiels reported Mr. Paez's inappropriate behavior to Donald Bahr ("Mr. Bahr").

35.     Mr. Bahr is Ms. Michiel's immediate supervisor and, like Mr. Paez, has the job title of Assistant Principal of CIHS.

36.     When Ms. Michiel reported the behavior, Mr. Bahr asked if she was okay, and then stated "I will speak to Mr. Paez."

37.     Mr. Bahr also stated that he was "disappointed that Mr. Paez took it to the next level."

38.     Following Ms. Michiel's complaint to Mr. Bahr, no corrective measures or

4

disciplinary action was taken by Mr. Bahr or any supervisory staff of the CIHS.

39.    Mr. Paez continued to make sexual advances towards Ms. Michiels and she continued to refuse him.

40.    In or about, September 17, 2015, Mr. Paez entered Ms. Michiel's office and stated "You look great" and "I will be in your office all day to harass you."

41.    Ms. Michiel responded to Mr. Paez by saying, "Please don't, I have a lot of work to do today."

42.    Following this response, Mr. Paez came further into Ms. Michiel's office and placed his hand inside her shirt.

43.    Mr. Paez then started to rub Ms. Michiels' breasts and abdomen.

44.    While Mr. Paez rubbed Ms. Michiels, he started moaning and stated "I am so turned on."

45.    Ms. Michiels immediately removed Mr. Paez's hand and told him to stop.

46.    Mr. Paez then walked behind Ms. Michiels' chair and started to rub her neck and shoulders.

47.    Mr. Paez then stated, "I have such a boner right now. I know that you have to be wet. Tell me how wet you are."

48.    Ms. Michiels' abruptly moved her body to get out of Mr. Paez's reach and asked him to leave.

49.    Clarisse Villatoro, ("Ms. Villatoro"), then walked into Ms. Michiels' office and asked to speak to her about a personal manner.

50.    Mr. Paez initially refused to leave and asked Ms. Villatoro if she needed class coverage.

51.    After Ms. Villatoro repeated that it was a "personal matter," Mr. Paez left the room.

52.     Immediately after Ms. Villatoro and Mr. Paez left, Ms. Michiels reported the incident to her Union President, Chris Marshall ("Mr. Marshall").

53.     Ms. Michiels told Mr. Marshall about the past incidents and stated, "I am sick of Mr. Paez doing whatever he wants" and "it needs to stop."

54.     Mr. Marshall told Ms. Michiels to meet him at the Assistant Superintendent's office that morning.

55.     Upon arriving to Central Administration, Ms. Michiels met with Michael Wolpert ("Mr. Wolpert"), the Assistant Superintendent for Personnel.

56.     Mr. Wolpert took a statement from Ms. Michiels and said, "I will do a full investigation and report my findings by early the following week."

57.     Mr. Wolpert asked if Ms. Michiels was okay to return to work and she responded "No" and was given the rest of the day off.

58.     Mr. Wolpert also asked Ms. Michiels, "How far do you want this to go?" to which she responded, "As far as possible."

59.     The following day, on or about September 18, 2015, Ms. Michiels took the day off using a sick day because she was not prepared to return to work and face Mr. Paez.

60.     On or about September 21, 2015, Ms. Michiels received a phone call from Mr. Wolpert and he asked Ms. Michiels to report to his office.

61.     Ms. Michiels attended the meeting with Mr. Marshall.

62.     During this meeting Mr. Wolpert read the results of the interviews.

63.     In the interviews, Mr. Paez stated he did not remember the yard stick incident or the incident in his office, but that he was in Ms. Michiels office on September 17, 2016, and was advising her to pin her shirt closed.

64.     In the interviews, Ms. Villatoro stated that she did not hear or see anything other than Mr. Paez in her office with Ms. Michiels and that she felt it was odd that he was in her

6

office so early.

65.     In the interviews, Mr. Bahr stated that Ms. Michiels reported both incidents to him and he admitted that he did not report these incidents.

66.     In the interviews, Mr. MacMongile stated he had no knowledge of either incident.

67.     Mr. Wolpert stated that Ms. Michiels would be able to receive a copy of his findings and that he gave Mr. Paez a "stern verbal warning."

68.     Mr. Wolpert explained to Ms. Michiels that he also told Mr. Paez that if any other incident was reported further action would be necessary and he was to have no contact with me.

69.     Mr. Wolpert provided Ms. Michiels with a copy of the CIHS's sexual harassment policy, but stated that he did not have an employee handbook.

70.     Mr. Wolpert also told Ms. Michiels that he would need to speak to the CIHS's attorney before receiving the report.

71.     On or about September 22, 2015, Ms. Michiels was informed by Mr. Marshall that Kevin Seaman, CIHS's attorney, advised Mr. Wolpert that she not receive a copy of Mr. Wolpert's report.

72.     After Ms. Michiel's meeting with Mr. Wolpert, Ms. Michiels has yet to feel fully comfortable at work again.

73.     Since the incident, Ms. Michiels has worked with Mr. Paez almost every day since.

## FIRST CAUSE OF ACTION
### (Hostile Work Environment in Violation of
### Title VII Against Defendant Central Islip
### School District Only)

74.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 73 as if separately set forth herein.

75.     At all relevant times, Plaintiff was an "employee" of Central Islip School District for purposes of Title VII.

76.     Upon information and belief, Central Islip School District is an "employer" for purposes of Title VII.

77.     Plaintiff endured sexual advances, flirting, and harassment from Defendant Central Islip School District's employees that were unwelcome, severe, pervasive, regular, repeated, and continuous.

78.     This harassment detrimentally affected Plaintiff, and was sufficiently severe or pervasive as to alter the terms and conditions of her employment and create a hostile, abusive working environment, and constitute discrimination against Ms. Michiels because of her sex with respect to the terms, conditions, and privileges of her employment, in violation of Title VII.

79.     A reasonable person would have found the harassment and discrimination Plaintiff experienced to be severe, pervasive, hostile and abusive, and Plaintiff herself subjectively found her work environment to be severe, pervasive, hostile and abusive.

80.     The acts complained of herein also constitute a continuing violation because Defendant Central Islip School District had notice and knowledge of the harassment of Plaintiff, and other women at Defendant Central Islip School District, but permitted it to continue unremedied for so long as to amount to a discriminatory policy or practice.

81.     Plaintiff reported the harassment to Mr. Bahr and Mr. Wolpert, but he failed to exercise reasonable care to prevent and correct promptly the harassing behavior.

8

82.     Accordingly, Plaintiff's Complaint challenges all discriminatory conduct and harassment by Defendant Central Islip School District as part of the violations complained of herein, even conduct that would otherwise be outside Title VII's limitations period.

83.     Since Defendant Central Islip School District engaged in discriminatory practices with malice or with reckless indifference for Plaintiff's federally protected statutory rights, Plaintiff also requests an award of punitive damages, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Hostile Work Environment in Violation of New York State Human Rights Law)

84.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 83 as if separately set forth herein.

85.     Plaintiff endured sexual advances, flirting, and harassment from Defendant Paez that was unwelcome, severe, pervasive, regular, repeated, and continuous.

86.     Plaintiff endured sexual advances, flirting, and harassment from Defendant Paez that was unwelcome, severe, pervasive, regular, repeated, and continuous.

87.     This harassment detrimentally affected Plaintiff, and was sufficiently severe or pervasive as to alter the terms and conditions of her employment and create a hostile, abusive working environment, and constitute discrimination against Ms. Michiels because of her sex with respect to the terms, conditions, and privileges of her employment, in violation of New York State law.

88.     A reasonable person would have found the harassment and discrimination Plaintiff experienced to be severe, pervasive, hostile and abusive, and Plaintiff herself subjectively found her work environment to be severe, pervasive, hostile and abusive.

89.     The acts complained of herein also constitute a continuing violation

because Defendants had notice and knowledge of the harassment of Plaintiff at Defendant Central Islip School District , but permitted it to continue unremedied for so long as to amount to a discriminatory policy or practice.

90.     Plaintiff reported the harassment to Mr. Bahr and Mr. Wolpert, but he failed to exercise reasonable care to prevent and correct promptly the harassing behavior.

WHEREFORE, while reserving the right to seek additional damages as available, Plaintiff demands judgment against Defendants as follows:

A.     On the First Cause of Action, front pay and benefits, plus compensatory and punitive damages, all in amounts to be determined at trial, as well as attorneys' fees, costs and interest;

B.     On the Second Cause of Action, front pay and benefits, plus compensatory damages, all in amounts to be determined at trial;

C.     Such other and further relief as this Court deems just and proper.

Dated:  January 30, 2017
        Rockville Centre, N.Y.

BRENDAN CHAO
Attorney & Counsellor at Law

By:     _____
        Brendan Chao (BC8811)

Attorney for Plaintiff
50 Merrick Road
Rockville Centre, NY 11570
(516) 466-2033

10